Charles Robert CATE *v.* Janeece Ann CATE

CA 90-379                                               812 S.W.2d 697

Court of Appeals of Arkansas
En Banc
Opinion delivered July 3, 1991

*Gocio & Dossey*, by *Jerry B. Dossey*, and *Ball & Mourton*,

by: *Kenneth R. Mourton*, for appellant.

*Mark Lindsay, P.A.*, by: *Mark Lindsay* and *Scott, Lashlee, & Watkins*, by: *Kim R. Lashlee*, for appellee.

JAMES R. COOPER, Judge. The parties in this marital property case were divorced by a decree dated October 30, 1989. In that decree, the chancellor specifically reserved the issue of property rights for later determination. Subsequently the parties entered into stipulations regarding the division of all marital property except 190,532 shares of common stock in Wal-Mart Stores, Inc. On January 24, 1990, a hearing was held on the sole issue of the division of those shares. The chancellor found that the appellant failed to meet his burden of proof in tracing the stock to his premarital profit sharing account, and that all the stock was acquired subsequent to the marriage. On the basis of those findings he concluded that the stock in question was marital property.

From that decision, comes this appeal.

For reversal, the appellant contends that the chancellor erred in finding that he failed to trace the stock to the premarital profit sharing account, and in ruling that the stock was entirely marital property. We agree, and we reverse and remand.

The record shows that the appellant began full-time employment with the Walton Management Company on June 1, 1956, and that he was a fully-vested participant in Walton Management Company's profit sharing trust when it was created on June 21, 1961, approximately five years prior to his marriage to the appellee on May 1, 1966. The appellant's fully-vested balance in the profit sharing trust on the date of his marriage to the appellee was $1,207.91. The appellant continued to work for Walton Management Company, Inc. until January 31, 1971, when he was hired by Wal-Mart Stores, Inc. The annual employer contributions to the Walton Management profit sharing trust subsequent to the marriage totaled $5,595.38 when the trust was frozen in 1972. The appellant did not elect to take distribution from the Walton Management profit sharing trust when he terminated his employment in 1971, but did take distribution from the Walton Management profit sharing trust on his retirement from Wal-Mart Stores, Inc., on July 31, 1981. It should be

noted that Walton Management Company and Wal-Mart stores are separate corporations with separate profit sharing trusts. The appellant recognized that the interest in the Wal-Mart profit sharing trust is marital property, and disbursements from the Wal-Mart profit sharing trust on his retirement are not at issue. Instead, the issues in the case at bar arise from the distribution from the Walton Management Co. profit sharing trust, in which the appellant elected to receive, in lieu of cash, 18,907 shares of Wal-Mart, Inc., stock issued in a single certificate in the name of the appellant, Charles Cate.

The stock split on July 9, 1982; on July 8, 1983; on October 4, 1985, and on July 10, 1987. The record also shows that, on occasion, some shares of stock derived from the original certificate were transferred to a brokerage account held jointly with the appellee to facilitate sales of portions of the stock. The appellant concedes that all shares held in the joint brokerage account at the time of the divorce were marital property. At trial, the appellant offered evidence consisting of various accounting methods employed to determine the increase in value, ruling that all the stock was marital property because it had been acquired during the marriage, and finding that the parties had made no effort to make a distinction between the marital stock and non-marital stock during the marriage.

■■ We agree with the appellant's contention that the chancellor erred in ruling that the stock was entirely marital property because it was acquired subsequent to the marriage of the parties. The record shows that the appellant had a fully-vested interest in the Walton Management Company's profit sharing plan prior to his marriage to the appellee. In Arkansas, the time when a retirement plan vests is determinative in deciding whether it is acquired during the marriage. When a pension "vests" it becomes a right which cannot be unilaterally terminated by the employer without also terminating the employment relationship, see Day v. Day, 281 Ark. 261, 663 S.W.2d 719 (1984), and we have held that:

> the time that a right to property is acquired, rather than the time the property is actually received, is the determinative factor in deciding whether or not that property had been acquired during the marriage.

*Wright* v. *Wright*, 29 Ark. App. 20, 779 S.W.2d 183 (1989).

■ In the case at bar, the appellant's right to benefits under the profit sharing plan was fully vested *before* his marriage to the appellee. As a general rule, the right to receive pension benefits is a marital asset only insofar as that right was acquired during the marriage. *See* 24 Am. Jur. 2d *Divorce and Separation* § 905 (1983), *see also Donovan* v. *Donovan* 25 Wash. App. 691, 612 P.2d 387 (1980) (holding that retirement benefits which accrued prior to marriage were husbands' separate property). This principle was recognized by Arkansas Supreme Court in *Marshall* v. *Marshall*, 285 Ark. 426, 688 S.W.2d 279 (1985), which held that pension benefits based on contributions or services not made during the marriage constitute the separate property of the recipient. Clearly, the appellant's premarital interest in the plan is his separate property. *Marshall, supra,* Ark Code Ann. § 9-12-315(b)(1) (Repl. 1991).

■ Likewise, under Arkansas law, property acquired in exchange for property acquired prior to the marriage or in exchange therefore, is excluded from the definition of marital property. Ark. Code Ann § 9-15-315(b)(2), (5) (Repl. 1991). It is clear from the record that the stock in question was acquired in exchange for the balance existing in the Walton Management Company profit sharing trust on the date of the appellant's retirement, and that there were substantial increases in the value of both the profit sharing account prior to distribution and the stock obtained at the time of distribution. We hold that the chancellor erred in ruling that all of the stock was marital property under Arkansas law. *See Marshall, supra; Wright* v. *Wright*, 29 Ark. App. 20, 779 S.W.2d 183 (1989); Ark. Code Ann. § 9-15-315.

■ Furthermore, we hold that the chancellor erred in finding that the stock in question had been commingled with marital stock and was therefore not traceable to the appellant's premarital interest in the Walton Management profit sharing plan. Our review of the record shows that the stock in question was held in certificates issued only in the appellant's name, with new certificates issued only in the appellant's name, with new certificates being issued as each stock split occurred. Although some shares were transferred to a joint brokerage account for

sale, and were therefore arguably commingled, we need not decide whether those shares lost their separate character because the appellant has conceded for purposes of appeal that any shares which were transferred to the joint brokerage account are marital property. Likewise, we find no commingling in the fact that stock splits resulted in shares from the wholly marital Wal-Mart profit sharing plan being issued in certificates including shares from the Walton Management distribution, because the evidence clearly shows that all the certificates in the appellant's sole name representing the stock at issue can be traced to the first 18,907 share certificate that the appellant received as the distribution on his retirement from the Walton Management Company profit sharing trust.

We find no merit in the appellee's assertion that it is necessary to trace individual shares of stock, as opposed to the certificates in which the stock was issued. Through their experts, the parties agreed that all the stock in question has a zero cost basis, and all three experts agreed that the stock was traceable through the certificates. Moreover, after taking into account the appellant's concessions on appeal, the only stock now at issue consists of shares held in certificates originally issued to the appellant and always maintained in his individual name in his separate safe deposit box. We hold that the chancellor erred in finding that the appellant failed to maintain the identity of the 151,256 shares of stock at issue on appeal.

It would seem logical for our next step to be a determination of the extent of the appellant's non-marital interest in the 151,256 shares of Wal-Mart stock, *see Nowell v. Nowell*, 31 Ark. App. 78, 787 S.W.2d 698 (1990). The appellant offers three alternative formulas which he claims would be appropriate in performing this task. However, because the case must be remanded for reasons we will explain shortly, regardless of the extent of the appellant's non-marital interest in the stock, we decline to do so, leaving that task for the chancellor.

The case must be remanded because our holding that the 151,256 shares of stock are traceable to the Walton Management profit sharing trust and are *at least in part*, non-marital property, does not end the inquiry: the Arkansas Supreme Court has recognized that

> [T]racing is a tool, a means to an end, not an end in itself. The fact that one spouse made contributions to certain property does not necessarily require that those contributions be recognized in the property division upon divorce.

*Canady* v. *Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986). Under Ark. Code Ann. § 9-12-315(a)(1) (Repl. 1991), all marital property is to be distributed one-half to each party *unless* the court finds such a division to be inequitable. *See Canady*, *supra*. Moreover, under Ark. Code Ann. § 9-12-315(a)(2) (Repl. 1991), all separate property is to be returned to the party who owned it prior to the marriage *unless* the court deems some other division to be equitable. Therefore, the chancellor's award on remand need not necessarily correspond to the findings regarding the extent of the separate and marital interests of the parties. *See Yokey* v. *Yokey*, 25 Ark. App. 321, 758 S.W.2d 421 (1988). Because the record is not fully developed regarding the equities relating to the property division, we remand for the chancellor to make this determination.

Reversed and remanded.

JENNINGS, J., dissents.